**Affirmed and Opinion Filed June 28, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00942-CR
## No. 05-19-00943-CR
## No. 05-19-00944-CR

**MARCOS GALLEGOS-MARTINEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. Nos. F18-57057-Q; F18-57058-Q; F18-57059-Q**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Myers

A jury convicted appellant Marcos Gallegos-Martinez of two aggravated robberies[1] and evading arrest or detention with a vehicle.[2] The jury found the enhancement allegations true and assessed punishment in all three cases at life imprisonment. In two issues, appellant argues the trial court erred in admitting inadequately authenticated evidence and that he received ineffective assistance of

---

[1] Cause numbers 05-19-00942-CR and 00943-CR.

[2] Cause number 05-19-00944-CR.

counsel. The State brings a cross-point asking that the judgment be reformed to correct clerical errors. As modified, we affirm.

## 1. Authentication

In his first point of error, appellant argues the trial court erred in admitting State's exhibits 17 and 18, video briefly showing appellant approaching an F-150 pickup truck belonging to Uvaldo Salinas—the complainant in 05-20-00943-CR, the second aggravated robbery case—prior to taking it. Appellant argues the trial court erred in overruling his objections that the State did not lay the proper foundation or predicate for the exhibits.

Texas rule of evidence 901 governs the authentication requirement for the admissibility of evidence:

> (a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

TEX. R. EVID. 901(a). Authenticity may be established with evidence of "[t]estimony of a witness with knowledge," which includes "[t]estimony that an item is what it is claimed to be." *Id.* at (b)(1). "Conclusive proof of authenticity before allowing admission of disputed evidence is not required." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). "Rule 901 'merely requires some evidence sufficient to support a finding that evidence in question is what the proponent claims.'" *Id.* (quoting *Reed v. State*, 811 S.W.2d 582, 587 (Tex. Crim.

–2–

App. 1991)). "'[T]he trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic.'" *Id.* at 849 (quoting *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015)). Once this prima facie showing has been made, the exhibit is admissible. *Tienda v. State*, 358 S.W.3d 633, 639–40 (Tex. Crim. App. 2012). Courts have referred to this initial determination "as a 'liberal standard of admissibility.'" *Fowler*, 544 S.W.3d at 849 (quoting *Butler*, 459 S.W.3d at 600).

"Video recordings without audio are treated as photographs and are properly authenticated when it can be proved that the images accurately represent the scene in question and are relevant to a disputed issue." *Id.*; *Rice v. State*, No. 05-15-01427–28-CR, 2017 WL 359755, at *3 (Tex. App.—Dallas Jan. 19, 2017, pet. ref'd) (mem. op., not designated for publication). "The most common way to authenticate a photograph or video is through testimony from a witness who observed the scene that it is an accurate representation of the scene." *Rice*, 2017 WL 359755, at *3. But even when a sponsoring witness's testimony fails to properly authenticate an exhibit, "'[e]vidence prematurely admitted in error may become admissible or be rendered harmless by subsequent evidence.'" *Id.* (quoting *James v. State*, 102 S.W.3d 162, 175 (Tex. App.—Fort Worth, pet. ref'd)).

We review a trial court's ruling on authentication issues under an abuse of discretion standard. *Fowler*, 544 S.W.3d at 848. "If the trial court's ruling that a

jury could reasonably find proffered evidence authentic is at least 'within the zone of reasonable disagreement,' a reviewing court should not interfere.'" *Id*. at 849 (quoting *Tienda*, 358 S.W.3d at 638).

In these cases, appellant was indicted for two aggravated robberies (05-20-00942-CR and 05-20-00943-CR) and for evading arrest and detention with a vehicle (05-20-00944-CR). Evidence showed that on August 23, 2018, at approximately 4:40 p.m., Dallas Police officer Caleb Morkert responded to a report of a suspicious vehicle. Upon arrival, Officer Morkert saw a white Chevy Avalanche that had been reported stolen and had a punched-out lock, parked in front of a house in the 3400 block of Borger Street. He called a tow truck driven by the complainant in the first aggravated robbery case (05-20-00942-CR), Jaime Camacho, and remained at the scene until Camacho towed away the Avalanche. As Camacho approached the Dallas city auto pound, a maroon Jeep cut him off from entering. Two men got out of the Jeep with multiple firearms and demanded Camacho "drop" the Avalanche. After Camacho unhitched the Avalanche, the two men left separately in the Jeep and the Avalanche. A couple of minutes after he called 911, Camacho heard a crash, followed by two or three gunshots. Camacho identified appellant at trial as one of the two men who robbed him that day.

Uvaldo Salinas, meanwhile, the complainant in the second aggravated robbery case (05-20-00943-CR), was in his 2003 Harley Davidson Edition F-150 truck near the scene of an accident that, according to other witnesses, involved a maroon Jeep.

–4–

Salinas could not ascertain why people were not going around the accident until he saw a Hispanic male in a white muscle shirt holding an assault rifle. After firing his weapon towards the wreck, this individual, later identified as appellant, first approached a white Dodge Ram, and then approached Salinas's truck and tried to open the doors. Appellant asked Salinas to let him in, and Salinas refused. He told Salinas he wanted his address so he could bring his truck back to him later, and he also offered to take Salinas hostage—offers Salinas refused. Fearing he would be shot, Salinas eventually surrendered his truck to appellant, and appellant fled the scene in Salinas's F-150.

The exhibits in question, State's exhibits 17 and 18, are video recordings taken just before the theft of Salinas's truck. State's exhibit 17, less than a minute in length, briefly shows, from an across-the-street vantage point, appellant approaching Salinas's F-150 truck while wearing a white muscle shirt and carrying a long rifle. He then walks around to the passenger side door. State's exhibit 18 is a sloweddown, close-up version of the same video.

Prior to the admission of State's exhibits 17 and 18, Salinas testified that he had met with the prosecutor before the trial. Although his recollection that appellant was wearing cargo pants was incorrect, Salinas correctly recalled that appellant was wearing a white muscle shirt. When, at trial, the State showed Salinas photos of his truck, he agreed the photos accurately depicted his truck. Salinas also acknowledged he had viewed both videos prior to trial and initialed each exhibit. He testified that

he believed that the videos fairly and accurately depicted appellant approaching his vehicle on August 23, 2018. John Brow, the Dallas Police Department detective that investigated the robbery, later testified that he obtained the video from two other officers, "Detective Lacy" and "Sergeant Zavala," neither of whom testified at trial.

The record includes fingerprint evidence heard during guilt-innocence and punishment. Dallas Police Department crime scene analyst Nicole Mejia testified at guilt-innocence that she collected latent prints from the maroon Jeep. The State offered into evidence State's exhibits 52 to 57, latent print cards with the prints Mejia obtained from the Jeep. These were admitted into evidence without objection from the defense.

State's exhibits 52 to 57 were later shown to Tammy McLean, a fingerprint examiner with the Dallas Police. McLean testified that she fingerprinted appellant that morning, July 17, 2019, and when questioned by the State, she explained that she compared these trial-day ink fingerprints (identified as State's exhibits 82 and 83) to the latent fingerprints in exhibits 52 to 57. She identified exhibit 81 as a report (fingerprint report 1) she generated regarding appellant's prints. The State then offered exhibits 81, 82, and 83 into evidence. Defense counsel did not object to exhibits 82 and 83, but she argued no predicate had been established for exhibit 81. Following a discussion at the bench that was off-the-record, the trial court sustained the defense's objection to exhibit 81 and admitted exhibits 82 and 83. The State asked McLean to explain State's exhibit 81, and she testified as follows:

–6–

Q. [STATE:] Now, Ms. McLean, State's Exhibit 81, what is State's Exhibit No. 81?

A. This is an examination report that we prepare when we do a comparison of latent prints to ink prints.

Q. Okay. And are—are the comparisons in this—the comparisons of the prints in 52 through 57, is this a report on documented comparisons to the person that this—these prints belong to?

A. Yes. This report will document all of the evidence that we examined, the individuals to whom we compare the—the evidence, and our conclusions.

Q. Okay.

[STATE]: State would offer State's Exhibit No. 81 for all purposes.

[DEFENSE COUNSEL]: No objection.

THE COURT: It's admitted.

After State's exhibit number 81 (fingerprint report 1) was admitted, McLean's testimony went, print by print, through each of the latent prints in exhibits 52 to 57. She testified that she compared these latent prints to the fingerprints of appellant in exhibits 82 and 83, and they matched appellant's fingerprints.

On cross-examination, defense counsel asked McLean how long it took her to perform a print comparison, and she testified that "[i]t varies per print," but that sometimes it could take twenty minutes and "[s]ometimes it may be a little less when it's very clear ridge detail." Counsel then asked McLean at what time she had taken appellant's prints that morning, and the State asked to approach the bench. This led to a second off-the-record discussion, after which counsel moved on to another topic. Counsel did not repeat the question. Counsel then asked a series of questions about

the location of the prints and their quality.

The evidence at punishment included testimony regarding an August 5, 2018, incident that occurred at around 10:30 or 11:00 p.m. in the parking lot of Wendy's located at the 2500 block of Royal Lane. Mayank Piplani testified that he went to the Wendy's to get something to eat, and that as his vehicle was sitting in the drive-thru lane a white Chevy pickup truck driven by appellant backed up and blocked his way forward. Appellant then got out of the Chevy with a gun in his hand and walked towards Piplani's vehicle. Piplani put his vehicle into reverse, and appellant grabbed onto Piplani's vehicle as he tried to pull away. Appellant fired into Piplani's vehicle as he fled from appellant, and several bullets entered the back of the windshield.

McLean testified at punishment that she performed a comparison of the latent fingerprints in exhibits 154 to 156, taken from Piplani's vehicle, against the trial-day ink fingerprints in exhibits 82 and 83. As before, she testified that when she performs a fingerprint identification she generates a report, and that her report, identified as State's exhibit 157 (fingerprint report 2), was made at or near the time of her examination. Defense counsel challenged the admission of this report by lodging a hearsay objection, and the trial court overruled the objection after reviewing the report.

In support of his argument that the trial court erred in overruling his objection to exhibits 17 and 18, appellant contends the State offered no evidence from Detective Lacy or Sergeant Zavala regarding the origin of the video; there is no date

or timestamp on the video indicating when it was taken; and Salinas's own testimony failed to authenticate the two exhibits. Appellant also complains that the only way the State was able to lay the proper foundation to admit the videos into evidence was by asking Salinas "leading questions," as follows:

Q. [STATE:] And State's Exhibit 17 and State's Exhibit 18, you've put your initials on both of these; is that correct?

A. That's correct.

Q. State's Exhibit 17 is a video of the aggravated robbery taken from across the street; is that correct?

A. That's correct.

Q. And State's Exhibit No. 18 is just a slowed down, closeup version of it; is that correct?

A. Correct.

* * * *

Q. . . . . State's Exhibits 17 and 18, do these fairly and accurately depict you being robbed or the Defendant approaching your vehicle the day of August 23rd, 2018?

A. Yes.

Appellant further complains that Salinas's testimony on direct after the videos were admitted about who had robbed him was "shaky." The relevant portion of the record reads as follows:

Q. [STATE:] Other than that day, have you ever seen the Defendant before or after that offense?

A. I—I just looked him up online. That's—other than that, that's it.

Q. After his arrest?

–9–

A.  Yes.

Q.  Okay.  Do you recognize that individual in the courtroom today?

A.  Yes.

Q.  Okay.  You're a little hesitant there.

A.  Yeah, I mean, it's been a while, and it was fast, but it looks like him.

Q.  And the person you're saying that you recognize in the courtroom today, what is he wearing?

A.  A suit and a black tie.

Q.  If I'm in seat No. 1, my cocounsel's in seat No. 2, 3, 4, 5, which seat  would he be in?

A. The fifth seat.

[STATE:]  May the record reflect that the witness has identified the Defendant in open court.

Appellant argues that allowing the videos into evidence bolstered Salinas's testimony as to identity.

We conclude, however, that Salinas's testimony, combined with the photo exhibits, allowed the trial court to reasonably determine exhibits 17 and 18 were what the State claimed them to be.  To begin with, appellant's complaint about leading questions is easily resolved because (1) there was no such objection to Salinas's testimony and (2) the determination a trial court must make under rule 901 has been described as a "liberal standard of admissibility."  *Fowler*, 544 S.W.3d at 849.  Salinas acknowledged he had viewed exhibits 17 and 18 during his meeting with the prosecutor prior to trial and initialed each exhibit, and he affirmed that he believed the videos accurately depicted appellant approaching his vehicle on August

–10–

23, 2018. *See id.* at 848. Moreover, questions posed to Salinas after the admission of the evidence only reaffirmed his prior testimony regarding what was on the video. And because exhibits 17 and 18 further tied appellant to Salinas's F-150, the trial court could have found they were relevant to the proceedings. We are similarly unconvinced by appellant's complaints about the lack of additional authentication evidence—e.g., testimony from investigating officers or the creator of the video. Rule 901, as we noted before, does not require conclusive proof of authenticity. *Id.* at 849. While the State could have provided more witnesses to authenticate the video, the trial court's implicit determination that Salinas supplied facts sufficient to support a reasonable jury determination that the video was authentic was within the zone of reasonable disagreement. *See id.* at 850.

Additionally, even if we determine the trial court erred, the error was harmless because it did not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). "The erroneous admission of evidence is non-constitutional error." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *see Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). We disregard a non-constitutional error that does not affect a criminal defendant's substantial rights. TEX. R. APP. P. 44.2(b); *Casey v. State*, 215 S.W.3d 870, 884–85 (Tex. Crim. App. 2007). Under that rule, we may not reverse for non-constitutional error if, after examining the entire record, we have a fair assurance the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Casey*, 215 S.W.3d at 884–85.

In this case, Salinas's testimony about the robbery, which the jury heard, combined with other evidence presented by the State, was sufficient to support the aggravated robbery conviction in 05-19-00943-CR. That evidence included police officers' testimonies about the high-speed chase and arrest involving appellant in Salinas's F-150; fingerprint evidence recovered from the F-150; and appellant's admissions during recorded jail telephone calls. In particular, during a phone call from the jail recorded on September 8, 2018, appellant described to a female caller about how he had been involved in a wreck, a shootout, he "dusted" the police, was chased by a helicopter, and fled the police on foot before his arrest. He also stated that he waited in the stolen Harley Davidson for four to six hours by the caller's house to pick her up, thus explaining what happened during the time between the theft of Salinas's vehicle and its discovery later by the police. He bragged about evading the police, and the caller told appellant people were listening to the scanner and rooting for him on social media.

This evidence linked appellant to Salinas's truck, which he is shown approaching in the video. Indeed, the overwhelming evidence against appellant is likely to have had a greater cumulative effect on the jury's decision to convict him than a video that was less than a minute in length. Therefore, we conclude that, given the substantial evidence of guilt in this record, any error by the trial court in admitting the video did not influence the jury or had but slight effect. We overrule appellant's first issue.

–12–

## 2. Ineffective Assistance of Counsel

In his second issue, appellant argues that trial counsel's failure to object to allegedly misrepresented evidence and testimony was deficient and caused harm to appellant.

To prove a claim of ineffective assistance of counsel, appellant must show (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

"'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'" *Lopez*, 343 S.W.3d at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id*. at 142.

The fact another attorney might have pursued a different course of action does not necessarily show ineffective assistance. *See Hawkins v. State*, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983); *Jones v. State*, No. 05-17-00068-CR, 2018 WL 459775, at *2 (Tex. App.—Dallas Jan. 18, 2018, no pet.) (mem. op., not designated for publication).

Appellant has the burden of establishing both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697. Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. However, "[i]f trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Nava*, 415 S.W.3d at 308 (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App.

–14–

2012)). When, as in this case, the record on appeal is silent regarding counsel's actions, we may not speculate to find trial counsel ineffective. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Appellant faults trial counsel for not raising a possible discrepancy between the dates on the trial-day ink fingerprints and the dates when the fingerprint reports were supposed to have been generated, which allegedly permitted fingerprint reports 1 and 2 to be admitted. Appellant points out that the dates shown on the trial-day ink fingerprints, exhibits 82 and 83, indicate they were taken on July 17, 2019, the date McLean testified. Yet, the "Date of Report" on fingerprint report 1 is June 22, 2019, over a month earlier. Appellant identifies an even greater alleged discrepancy between the July 17, 2019, trial-day ink fingerprints and the "Date of Report" on fingerprint report 2, which is August 10, 2018.

Appellant argues that these discrepancies show fingerprint reports 1 and 2 should not have been admitted into evidence because they were based on a comparison of the latent prints in exhibits 52 to 57 and 154 to 156 to ink fingerprints that are not in the record, and that trial "counsel's failure to recognize the misrepresentation of these two fingerprint reports prejudiced the [a]ppellant." Appellant contends the two fingerprint reports, combined with the allegedly unauthenticated videos and the testimony associated with these pieces of evidence, "gave added weight to the identity of the [a]ppellant as the individual involved in these offenses."

But appellant did not raise the issue of ineffective assistance in a motion for new trial and, thus, the record before us is silent regarding the reasons for trial counsel's actions. A review of the record shows, moreover, that counsel fought the admission of both reports, first drawing the trial court's attention to fingerprint report 1 by objecting that the State failed to lay a proper foundation. Because the discussion at the bench that followed is off-the-record, it is unclear whether counsel recognized appellant's current complaint regarding the report. In any event, the record shows that the State then proceeded print-by-print and McLean answered affirmatively that each print had been compared against the trial-day fingerprints in exhibits 82 and 83.

The record shows, additionally, that trial counsel attempted to attack McLean's testimony that she compared the latent fingerprints in exhibits 52 to 57 against the trial-day prints. Counsel began by asking McLean how long it would take her to do a fingerprint comparison, and she provided an estimate. Counsel followed by asking at what time McLean rolled the prints. This may have alluded to the argument appellant contends counsel should have raised, but the State intervened before McLean could answer. The bench conference that followed was off-the-record, so, again, the record is silent as to counsel's motivations or whether counsel wanted to continue that line of questioning. Because of the off-the-record conversations between the trial court and the parties, we can only speculate on trial counsel's possible strategy regarding fingerprint report 1, and this is not a sufficient

–16–

basis for finding deficient performance.  *See Lopez*, 343 S.W.3d at 142.

Regarding fingerprint report 2, counsel fought the admission of this report by lodging a different objection, hearsay, after McLean testified that she compared the latent fingerprints in exhibits 154 to 156 against the trial-day prints, and that she generated a report.  The trial court did not hear arguments from the attorneys and reviewed the report before overruling counsel's objection without comment.  The hearsay objection may indicate a possible change in counsel's strategy, but, once again, the record is silent regarding counsel's motivations.

Given the record before us, we conclude appellant has failed to rebut the strong presumption of reasonable assistance, and we overrule appellant's second issue.

### 3. State's Cross-Point

We now turn to the State's cross-point arguing the written judgment in cause number 05-19-00942-CR incorrectly states that appellant pleaded "guilty" to the offense.  The record, in fact, shows appellant entered a plea of "not guilty" after arraignment and again before the jury.  Additionally, the written judgments in all three cases incorrectly state that the jury found the two enhancements in each indictment as "not true," when the record shows the jury found the enhancements to be "true" for each indictment.

When the record provides the necessary information to correct inaccuracies in the trial court's judgment, we have the authority to reform the judgment to speak the

truth.  TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).  Accordingly, because the record contains the necessary information for us to reform the judgments, we therefore reform the judgment in 05-19-00942-CR to show appellant pleaded "not guilty," and the judgments in all three cases will be reformed to show the jury found the enhancement paragraphs to be "true" for each indictment.

As modified, we affirm the trial court's judgments.


/Lana Myers//
_____
LANA MYERS
JUSTICE

190942f.u05

190943f.u05

190944f.u05

Do Not Publish
TEX. R. APP. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARCOS GALLEGOS-
MARTINEZ, Appellant

No. 05-19-00942-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F18-57057-Q.
Opinion delivered by Justice Myers.
Justices Partida-Kipness and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

The portion of the judgment entitled "Plea to Offense" is changed from
"GUILTY" to "NOT GUILTY."

The portion of the judgment entitled "Findings on 1st Enhancement
Paragraph" is changed from "FOUND NOT TRUE" to "FOUND
TRUE."

The portion of the judgment entitled "Findings on 2nd Enhancement
Paragraph" is changed from "FOUND NOT TRUE" to "FOUND
TRUE."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 28th day of June, 2021.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MARCOS GALLEGOS-
MARTINEZ, Appellant

No. 05-19-00943-CR　　V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F18-57058-Q.
Opinion delivered by Justice Myers.
Justices Partida-Kipness and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The portion of the judgment entitled "Findings on 1st Enhancement Paragraph" is changed from "FOUND NOT TRUE" to "FOUND TRUE."

The portion of the judgment entitled "Findings on 2nd Enhancement Paragraph" is changed from "FOUND NOT TRUE" to "FOUND TRUE."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 28th day of June, 2021.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARCOS GALLEGOS-
MARTINEZ, Appellant

No. 05-19-00944-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F18-57059-Q.
Opinion delivered by Justice Myers.
Justices Partida-Kipness and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The portion of the judgment entitled "Findings on 1st Enhancement Paragraph" is changed from "FOUND NOT TRUE" to "FOUND TRUE."

The portion of the judgment entitled "Findings on 2nd Enhancement Paragraph" is changed from "FOUND NOT TRUE" to "FOUND TRUE."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 28th day of June, 2021.